STREET RAILWAYS—MOTIVE POWER—CHANGE—ABUTTING PROPERTY—REQUIRED CONSENT—COMMISSION—SUBSTITUTED CONSENT.

Under Laws 1890, c. 565, § 100, providing that any change in the motive powers of a street railway must be consented to by the owners of one-half the abutting property, and in case such consent could not be obtained the determination of a commission appointed by the general term of the supreme court in favor of such motive power, when confirmed by the court, should be taken in lieu thereof, and that such consent should be obtained in the same manner as provided in sections 91 and 94 of the same act, which sections require that for the construction of a street railway the consent of the owners of one-half "in value" of the abutting property should be obtained, etc., a petition for a commission to authorize a change of motive power, alleging that the consent of the owners of one-half "in value" of the required property could not be obtained, was not insufficient because it did not show that the consent of the owners of one-half the "lineal front feet" of such property could not be obtained, since the evident intent of the legislature was to conform the practice of obtaining the consent to a change in motive power to that required for the construction of a street railway.

Petition of the Rochester & Lake Ontario Railway Company for appointment of commissioners to determine a change of motive power. Granted.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles J. Bissell, for petitioner.
Lewis & McKay, for property owners.

LAUGHLIN, J. The petitioner was organized on the 3d day of June, 1879, pursuant to the provisions of chapter 606 of the Laws of 1875, for the purpose of constructing and operating a steam surface railroad in certain streets and highways and over private property in the city of Rochester and in the town of Irondequoit, Monroe county. In that year it constructed, and has ever since operated, its railroad in and through North or Portland avenue, from Bay street to Norton street, in the city of Rochester, and along a highway, and over private lands in said town of Irondequoit, using steam as a motive power. The railroad company now desires to change its motive power from steam to electricity to be applied by the single, overhead trolley system. The petition shows that the company has obtained the requisite consent of all property owners in the town, but that it has been unable to obtain the consent of the owners of one-half in value of the property bounding upon that portion of North avenue or Portland avenue through which its road runs.

By making this application pursuant to section 100 of the railroad law, the petitioner concedes the necessity of obtaining the consent of the property owners, and, as the property owners contend that such consent is necessary, we will assume, without examining the question, that this provision of the law is applicable to the petitioner. The property owners, however, challenge the sufficiency of the petition, in that it does not show that the petitioner has been unable to obtain the consent of the owners of one-half the lineal feet frontage of the lands bounded on that part of the avenue as to which it is proposed to change the motive power. By the amendment to section 18, art. 3, of the constitution, which became of force on January 1, 1875, the legislature was prohibited from passing any private or local bill granting to any corporation, association, or individual the right to lay down railroad tracks, and was directed to enact general laws on that subject; but it was expressly provided that no law should authorize the construction or operation of street railroads, excepting upon condition that the consent of "the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained"; and it was provided that the determination of commissioners appointed by the general term, when confirmed by the court, might be taken in lieu of the consent of the property owners. The first general law providing for the construction of street surface railroads was chapter 252 of the Laws of 1884. Sections 3 and 4 of this statute carried into effect the con-

stitutional provision with reference to obtaining the consent of the local authorities and property owners for the construction and op eration of such railroads, and section 12 thereof provided as follows: "Any street surface railway company may in any case operate any portion of its roads by animal or horse power, or by any power other than locomotive steam power, which may be consented to by the local authorities and by a majority of the property owners, obtained in accordance with sections 3 and 4 of this act." The section last quoted was materially amended by chapter 531 of the Laws of 1889, which provided that any street surface railway company may, in any case, operate any portion of its railroad by cable or electricity, or by any power other than locomotive steam power, instead of by animal or horse power, which may be approved "by the state board of railroad commissioners and consented to by the owners of one-half in value of the property bounded on that portion of the railroad as to which a change of motive power is proposed, and in case the consent of the property owners could not be obtained, that then the determination of commissioners appointed by the general term in favor of such motive power, when confirmed by the court, should be taken in lieu thereof." It was further provided that the provisions of that act with reference to obtaining the consent of the property owners for the construction and operation of the road should apply, as far as applicable, to the consent for a change of motive power, and to the proceedings to obtain substituted consent, and it authorized the necessary changes in the roadbed incident to a change of motive power. It will be observed that this amendment substituted the consent of the railroad commissioners for that of the local authorities, and altered the phraseology with reference to the consent of the property owners to conform to the requirements of the constitution with reference to consents for the original construction and operation of a road, and also made provision for obtaining the consent of the property owners by commission the same as was provided by the constitution and general law with reference to the consent for original construction and operation. It was said by Judge Earl in Re Third Ave. R. Co., 121 N. Y. 536, 24 N. E. 951, 9 L. R. A. 124, that this amendment was enacted as a result of the decision in People v. Newton, 112 N. Y. 396, 19 N. E. 831, where the local authorities had withheld their consent to the opening of the street, and the alterations incident to a change of motive power on the Third avenue line from horse power to the cable system, and where the court declined to issue a peremptory writ of mandamus directing the granting of such permit on the ground that the railroad company, which, however, was not organized under the general street surface railway act, was not authorized by statute to make the changes and alterations for which it sought a permit. The court of appeals, in Re Third Ave. R. Co., supra, held that it was competent for the legislature to authorize a change of motive power without the consent of the local authorities. In that particular case the company had obtained its franchise prior to the adoption of said constitutional amendment, but the opinion does not seem to have been controlled or limited

by that fact. In 1890 the legislature enacted the general railroad law (Chapter 565, Laws 1890) as prepared and submitted by the commissioners of statutory revision, who were authorized by chapter 289 of the Laws of 1889 to draft a proposed revision and consolidation of general laws. Section 100 of this act is the revisers' reproduction of the existing general laws relating to a change of motive power on street railroads. In it we find numerous changes in phraseology from the old laws, and, among others, the omission of the words "in value" after the word "property," so that the provision relating to the consent of property owners now reads, "and consented to by the owners of one-half the property bounded on that portion of the railroad with respect to which a change of motive power is proposed." The revisers, in transmitting to the legislature the proposed railroad law, gave no intimation of any intention on their part to alter the existing law by this change in verbiage. The section provided, as in the former law, that the consent of the property owners should be obtained, and the proceedings for the appointment of commissioners and obtaining substituted consent should be conducted, in the same manner as provided in sections 91 and 94, relating to obtaining consent for the original construction and operation, "so far as the same can properly be made applicable thereto." This act repealed the general surface street railway law of 1884. The railroad law took effect on May 1, 1891, and section 182 thereof, also recommended by the revisers, provided as follows: "The provisions of this chapter, so far as they are substantially the same as those of laws existing on April thirty, eighteen hundred and ninety-one, shall be construed as a continuation of such laws, modified or amended according to the language employed in this chapter, and not as new enactments." The property abutting or bounded upon the street consists of the buildings and other improvements as well as the land. The section as it now reads is quite as susceptible of the construction that it means one-half the value of the property as one-half of the lineal feet frontage. Had the legislature intended a radical change in the law, such as from value to frontage, it is probable that words appropriate to express such intention would have been incorporated in the act. While it may not have been required by the constitution, we think the intention of the legislature was to conform the practice in obtaining the consent of the property owners to a change of motive power to that prescribed for obtaining their consent to the original construction and operation of the road, and we do not consider that the omission of these words from this section, occurring in the manner we have pointed out, manifests a change of such legislative intent. We therefore deem the petition sufficient in that regard, and grant the prayer thereof. If the attorneys for the respective parties are unable to agree upon commissioners, they may, within two days, submit lists of names for our consideration. All concur.